# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

REBECCA A. WEEKS, )
 )
        **Plaintiff,** )
 )
v. )
 ) No. 09-2498-CM/GLR
 )
DAN MCLAUGHLIN, et al., )
 )
        **Defendants.** )
 )

## MEMORANDUM AND ORDER

Plaintiff Rebecca A. Weeks brings this civil rights employment discrimination action against defendants Dan McLaughlin and the State of Kansas, Office of the Fire Marshal ("OFM"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Before the court is Defendants' Motion for Summary Judgment and to Dismiss (Doc. 79). For the reasons set out below, the court grants defendants' motion.[1]

**I.    Factual and Procedural Background**[2]

Plaintiff is female. She began working at OFM as General Counsel on June 28, 2004, after

---

[1] Plaintiff filed a response to defendants' motion on May 3, 2011. After receiving an extension of time, defendants filed their reply on June 3, 2011. On June 24, 2011, plaintiff purported to file a motion for leave to file a surreply (Doc. 106). The court does not consider the motion to be timely filed. And, although it reviewed the motion and defendants' response, the court concludes that in light of the instant order, the motion is denied as moot.

[2] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties and included only those that are relevant, material, and properly supported by the record.

having been appointed by then-Attorney General Phill Kline. She had previously been an Assistant Attorney General in civil litigation since 2002.

Defendant McLaughlin had been employed in OFM since 1999. In November 2007, he was appointed as Fire Marshal. He served as Acting Fire Marshal until the Kansas Senate confirmed his appointment in April 2008.

Plaintiff was terminated on April 22, 2009. Her salary continued until May 6, 2009, and her insurance benefits continued through May 31, 2009. Throughout her employment, plaintiff was an unclassified State employee, meaning her employment could be terminated at will for any reason or no reason so long as it did not violate the law.

Plaintiff contends that she was terminated (1) because of her gender; (2) because of certain remarks she made regarding Governor Sebelius; and/or (3) because of or in retaliation for her legal advice that McLaughlin had violated the law regarding certain personnel issues. She alleges equal protection violations, retaliation in violation of the First Amendment, and disparate treatment and retaliation in violation of Title VII.

Defendants contend plaintiff was terminated for poor work performance. Specifically, defendants contend that, although part of plaintiff's job as General Counsel was to draft legislation and regulations, she failed or refused to do so in an adequate or timely manner. Additionally, after plaintiff was terminated, defendants learned of misconduct she committed that would have justified termination had defendants been aware of it. Defendants seek summary judgment as to all of plaintiffs' claims, and seek judgment against plaintiff on their affirmative defense of after-acquired evidence of wrongdoing under *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352 (1995), because plaintiff was spending more time on personal emails and internet use than on her work.

Additionally, defendant McLaughlin seeks dismissal of the claims against him based on the doctrine of qualified immunity.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256.

Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). However, the standard does not permit the court to make unreasonable factual inferences in favor of the non-moving party. *Carney v. City of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008).

### III. Discussion

### A. Disparate Treatment in Violation of Title VII (Count III – Defendant OFM)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). While Title VII is a remedial statute which should be liberally construed, *see Jackson v. Cont'l Cargo-Denver*, 183 F.3d 1186, 1189 (10th Cir. 1999), it should not be treated as a "general civility code" and should be "directed only at discrimination because of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1220–21 (10th Cir. 2007) (quotation omitted).

As in this case, where direct evidence of discrimination is absent, Title VII claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Etsitty*, 502 F.3d at 1220. Under that framework, the plaintiff must initially establish a prima facie case of discrimination. 411 U.S. at 802. Then, defendant must offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* at 802–03; *Randle v. City of Aurora*, 69

F.3d 441, 451 (10th Cir. 1995). If the defendant does so, then the burden reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual, *i.e.*, unworthy of belief." *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 327 (10th Cir. 1996).

Defendants concede that plaintiff can establish a prima facie case because she "is a woman, was qualified . . . , and was terminated." (Doc. 80, at 51.) And plaintiff acknowledges that defendants meet their burden to articulate a legitimate non-discriminatory reason for her termination: that she was not doing her job. Because of these concessions, the court might be inclined to bypass these initial inquiries and turn to the third step of the analysis to determine whether plaintiff can establish pretext.

However, the "critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220 1227 (10th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007). There must simply be a logical connection between each element of the prima facie case and the inference of discrimination. *Kendrick*, 220 F.3d at 1227 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311–12 (1996)). Having thoroughly reviewed the record presented, the court is convinced that no such inference exists here.

Other than plaintiff's conclusory assertion that her gender must have formed the basis for her termination, the record is completely devoid of any factual basis for this assertion. On the contrary, there is no indication that similarly situated individuals were treated differently or more favorably: plaintiff was the only attorney in the office. Both her predecessor and her successor in the position

-5-

of General Counsel were female. A majority of plaintiff's peers in management were female. Although plaintiff asserts McLaughlin failed to follow the Employee Handbook adopted by the Office because he never conducted a performance review of plaintiff, plaintiff stipulates that she was an unclassified, at-will employee who could be terminated for any reason or no reason, and, on its face, the handbook regulations apply to classified employees. (Doc. 98-3.)

Plaintiff simply fails to produce proof of circumstances giving rise to an inference of unlawful discrimination. Defendants are entitled to summary judgment.

Even if plaintiff were able to establish this critical element of her prima facie case, she fails to "show there is a genuine issue of material fact as to whether the proffered reason [ ][is] pretextual." *Etsitty*, 502 F.3d at 1225 (quoting *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

"A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003) (quotation omitted). Such a showing may be made by revealing "such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions, in the employer's proffered legitimate reasons for its action that a reasonable factfinder could . . . infer that the employer did not act for the asserted non-discriminatory reasons." *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) (quotation omitted). Although this court must resolve all doubts in plaintiff's favor, "[m]ere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Plaintiff relies on four pieces of circumstantial evidence in support of her burden to show pretext: false explanations; conduct contrary to policy; use of subjective criteria; and weak or

-6-

implausible explanations.

Plaintiff first asserts McLaughlin gave several explanations relating to the termination that the jury might disbelieve. The court notes that, under the facts and circumstances of this case, questions relating to when the termination decision was made are not legally significant to establish pretext.[3] However, evidence that tends to discredit defendants' non-discriminatory reason for the termination, that is, poor job performance, is significant. To this end, plaintiff asserts that McLaughlin's testimony that plaintiff failed to adequately perform duties related to drafting or revising regulations and statutes is undermined by the fact that plaintiff had "complete latitude" in her position for completing work assignments and establishing priorities; that McLaughlin never gave plaintiff any deadlines for completing any drafting or revising projects; and he never indicated that her work relating to drafting or revising statutes or regulations was unsatisfactory.

She also challenges McLaughlin's testimony that "up to 100 percent" of the general counsel's job description could be work pertaining to regulations and statutes because this characterization is contrary to plaintiff's description of the position. (Doc. 81-3, at 21) (McLaughlin testimony.)

Second, plaintiff asserts that McLaughlin's failure to follow the written policy of the Kansas Fire Marshal's Office suggests pretext. According to plaintiff's brief, the Employee Handbook

---

[3] According to plaintiff, testimony that McLaughlin and then-Attorney General Paul Morrison agreed in January of 2008 to terminate plaintiff's employment is undermined by the fact that McLaughlin did not become acting State Fire Marshal until November 1, 2007 and that Morrison, in June of 2007, had approved a 23 percent salary increase for plaintiff upon request of McLaughlin's predecessor. Plaintiff also asserts that, based on certain April emails and testimony by Beth Visocsky, Human Resources Director for the Attorney General's Office, the jury might disbelieve McLaughlin's testimony that the final decision to terminate plaintiff was made during a January 14, 2009 meeting. However, even assuming the truth of plaintiff's version of events, this evidence does not suggest that the reason given for the termination is pretextual or unworthy of belief.

-7-

adopted by the Office prescribes performance reviews, but McLaughlin never conducted a performance review of plaintiff. Nevertheless, plaintiff stipulates that she was an unclassified, at-will employee and could be terminated for any reason or no reason. Moreover, on its face, the handbook regulations apply only to classified employees. (Doc. 98-3.)

Third, plaintiff suggests that a jury could find, based on her testimony that McLaughlin never gave her deadlines, that he improperly used subjective criteria in evaluating her job performance.

Finally, plaintiff suggests that, although McLaughlin testified that the decision to terminate plaintiff was made in January 2008, she was not terminated until April 2009 and, in light of the long delay, a jury could find the proffered reason to be "weak, implausible, or incoherent." (Doc. 97, at 24.)

The court does not believe that plaintiff's evidence gives rise to an inference that the proffered explanation was pretextual. The fact that there is disagreement about what percentage of the general counsel's duties involved proposed legislation or drafting or amending statutes and regulations merely establishes dispute as to the extent plaintiff was performing her job. Indeed, the position description describes these duties as comprising 5 percent of the job. Plaintiff testified that, from year to year, that duty accounted for 1 to 10 percent of the job. (Doc. 82-1, at 15.) McLaughlin acknowledged the position description's attribution of 5 percent to the duty of drafting regulations, but suggested that many of the position descriptions — "about 45 percent"— directly or indirectly pertain to "writing new statutes or new administrative rules and regs or amending old statutes and old administrative rules and regs." (Doc. 81-3, at 21.) McLaughlin testified that he believed this was one of the "bigger duties" the general counsel was responsible for, as the only attorney in the agency. (Doc. 81-3, at 8–9.) He acknowledged that she had latitude to prioritize her tasks. There is no dispute that the position description included working on amendments to

-8-

regulations and drafting proposed legislation for the agency. (*See* Doc. 82-1, at 5, 14–15, 19) (plaintiff testifying that working on amendments to regulations was within her job description).

None of the bases plaintiff offers controvert the legitimate, non-discriminatory reason offered by defendants for why plaintiff was terminated. Even assuming there is a genuine issue of fact as to how much of plaintiff's job duties involved drafting or amending statutes or regulations and how much of this work plaintiff actually accomplished during her employment with defendant, the court does not believe that this evidence, even viewed most favorably to plaintiff, raises an inference that the proffered reason is pretextual and was instead based on plaintiff's gender. Even viewed in the light most favorable to plaintiff, no reasonable jury could determine that gender discrimination more likely motivated defendant's conduct. Accordingly, defendant's motion for summary judgment as to plaintiff's gender discrimination claim is granted.

**B.      Gender Discrimination in Violation of Equal Protection (Count I – Defendant McLaughlin)**

With respect to plaintiff's Equal Protection claims brought pursuant to § 1983, she makes no arguments aside from her Title VII claim that she was discriminated against because of her gender. Instead, she relies on the same circumstantial evidence as she does in support of her Title VII claim, discussed above. Indeed, the elements of a disparate treatment claim are the same whether the claim is brought under § 1983 or Title VII. *See Maldonado v. City of Altus*, 433 F.3d 1294, 1307 (10th Cir. 2006) ("In disparate-treatment discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." (quotations and alterations omitted)), *overruled on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Because plaintiff does not argue there was a violation of the Equal Protection Clause separate from her Title VII gender discrimination claim, her Equal Protection claim fails for

the same reasons discussed above.  *See Etsitty*, 502 F.3d at 1227–28.

**C.     First Amendment Retaliation (Count II)**

Plaintiff next asserts that she was retaliated against for exercising her right to free speech under the First Amendment.  She argues that her private speech on a matter of public concern, specifically, some disparaging comments she made in staff meetings regarding then-Governor Sebelius, motivated the termination.  (Doc. 58, at 11–12.)

Defendants first question whether these remarks, as a ground for the claim, were properly raised and/or preserved.  Plaintiff's Second Amended Complaint (SEALED Doc. 15) does not set out any facts relating to such remarks, and bases the First Amendment retaliation claim of Count II on plaintiff's speaking out about possible acts of discrimination occurring within the OFM office.  (Doc. 15, at 5–6.)  (See infra, subsection E.)

Among plaintiff's contentions in the pretrial order, however, are that McLaughlin's notes indicate his displeasure with her because, "[i]n a[n] all-staff meeting she made several disparaging remarks re: Governor Sebelius."  (Doc. 83-12, at 3; 83-4, at 3.)  Plaintiff now appears to rely solely on this as her theory of recovery on this count, but has not sought to amend her pleading.  Regardless, the pretrial order "supersede[s] all pleadings and control[s] the subsequent course of [the] case."  (Doc. 58, at 1.)  Although the court notes the defendants' objection, and shares defendants' concern about the shifting basis for this retaliation claim, the court will accept the contentions and theories of recovery as they are set out in the pretrial order.

In evaluating a plaintiff's First Amendment retaliation claim, the court applies the five-part analysis from *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007).  The Tenth Circuit has succinctly summarized the five steps of this analysis:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009).

"The first three steps of the *Garcetti/Pickering* analysis are issues of law 'to be resolved by the district court, while the last two are ordinarily for the trier of fact.'" *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (quoting *Brammer-Hoelter*, 492 F.3d at 1203). On a motion for summary judgment, the court must view the facts relevant to those issues of law in the light most favorable to the nonmoving party.

Defendants concede that she meets her burden at the first step. The court must next consider whether the speech was on a matter of public concern. Speech on matters that are "internal in scope and personal in nature" is not protected. *Brammer-Hoelter*, 492 F.3d at 1206 (citing *Bunger v. Univ. of Okla.*, 95 F.3d 987, 992 (10th Cir. 1996)); *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996) (noting that speech on "internal departmental affairs and personal interest" is not a matter of public concern). In contrast, "[m]atters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48.

However, evidence of the content and the context of the speech is lacking in the record. Defendants' statement of facts points to several comments (Doc. 80, at 9, 10, 22, 23), and plaintiff's

-11-

response brief points to one of these—a comment that "Governor Sebelius had played kissy smoochy face with [President] Obama long enough that she should get elected to some cabinet position." (Doc. 97, at 25.) Plaintiff testified that this comment was made at a senior staff meeting, as opposed to an all-staff meeting as McLaughlin referred to in his notes. Plaintiff admits she has no recollection of what comments she may have made at an all-staff meeting. (Doc. 83-7, at 8.) McLaughlin admits he does not remember the nature of the "disparaging remarks" referred to in his notes, (Doc. 83-4, at 3), let alone whether they were political in nature.

After review of the evidence, the court is unable to determine on exactly what remarks plaintiff bases her claim; what the nature of such remarks was; in what context the remarks arose; and precisely what links exists between the particular comment or comments mentioned and plaintiff's termination. Thus the court is unable to determine whether plaintiff was speaking on matters of public concern. Due to the lack of evidence in the record, the court finds defendants are entitled to summary judgment on this claim.

## D.     Retaliation in Violation of Title VII (Count IV)

Plaintiff argues that, with respect to legal advice she gave McLaughlin regarding OFM employees Amanda Yorkey and John Patchen, she was engaging in protected activity by protesting what she believed to be gender discrimination. She asserts that in retaliation for this activity she was terminated. (Doc. 58, at 11–12.)

By way of background: Mr. Patchen believed that he was being harassed by another employee or employees. Although he did not believe this harassment was due to his gender, he did believe it was creating a hostile work environment. He prepared an informal grievance. (Doc. 89-3, at 2.) In October 2008, plaintiff advised McLaughlin of potential EEOC violations being committed by the other employee(s) in regard to Mr. Patchen, but plaintiff asserts that no disciplinary action

was taken. (Doc. 81-2, at 4.)

Ms. Yorkey applied for and was promoted internally to fill a position being vacated by another employee. She learned that her pay in the new position, while an increase from her previous position, was not as much as she had originally thought it would be. Specifically, it was not as much as the person vacating the position had been making. She did not believe that the discrepancy was due either to her gender or to the fact that she was pregnant, but on April 7, 2009, she sent an email to McLaughlin inquiring about the reason for the discrepancy. She also spoke to plaintiff about her complaint. On April 10, McLaughlin responded to her inquiry with an explanation of his reasons for the rate of pay, but told her he would consider her request. In a subsequent meeting with plaintiff, plaintiff informed Ms. Yorkey that McLaughlin was wrong; that his email amounted to pregnancy discrimination; that he had gone against plaintiff's advice; and that Ms. Yorkey had a valid grievance. Before Ms. Yorkey filed a formal grievance, however, McLaughlin notified Ms. Yorkey, through plaintiff and another OFM employee, that he agreed to give her a retroactive pay increase. Satisfied with this result, Ms. Yorkey signed a release of claims.

Under the familar burden-shifting analysis of *McDonnell Douglas*, plaintiff must first establish a prima facie case of retaliation by showing that she engaged in protected opposition to discrimination; she suffered an adverse action; and a causal nexus existed between her opposition and the adverse action. *See Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002). Although she was terminated, the court finds that there is not sufficient evidence in the record to put the claim before the jury.

She argues retaliation could be inferred from the fact that McLaughlin disregarded her legal advice in the Patchen and Yorkey matters; that she was fired eight days after she rendered her legal advice in the Yorkey matter; and that she had been given no previous reprimands or warnings.

First, it appears from the record that McLaughlin did not, in fact, disregard plaintiff's legal advice in either matter. On the contrary, it appears that he addressed and resolved the matters to the satisfaction of both employees. (Docs. 89-3, 1–8; 92-9, 1–15.)

Moreover, plaintiff does not establish that, by performing the duties of her position in advising the agency of potential personnel issues, that she engaged in any protected opposition to discrimination. *See, e.g., Crosby v. City of Walterboro*, 444 F. Supp. 2d 559 (D. S.C. 2006) (former police officer's advice to subordinate female officer to consult attorney regarding potential sexual harassment claim against supervisor did not constitute protected "opposition activity" for purposes of officer's Title VII retaliation claim). Based on the evidence presented, plaintiff fails to establish any genuine issue of material fact regarding her Title VII retaliation claim. Defendants are entitled to judgment as a matter of law.

**E.     Qualified Immunity Defense, After-Acquired Evidence Defense**

In light of the court's rulings on the merits, defendants' arguments regarding qualified immunity and after-acquired evidence are moot and will not be addressed.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment and to Dismiss (Doc. 79) is granted. Plaintiff's Motion for Leave to File a Surreply Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 106) is denied as moot.

Dated this 28th day of June 2011, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
